So with that, I think, Ms. Peterson, you're first? Yes, Your Honor. You may take it away. Thank you. May it please the Court, my name is Tamara Beatty Peterson and I represent the appellants, the plaintiffs in the case below, Wealthy, Inc. and Dale Butchkowski. With the Court's permission, I'd like to reserve five minutes for rebuttal. Yes. Thank you. I'm going to speak first about the appeal as to the Mulvehill defendants. This Court's en banc decision in Briskin v. Shopify completely resolves all of the issues in the appeal regarding the Mulvihill defendants. Briskin establishes that the District Court did have specific personal jurisdiction over the Mulvihill defendants, and so the District Court erred in dismissing this case against the Mulvihill defendants. Mr. Mulvihill's statements, his defamatory statements, were made to a Nevada resident, Mr. Cornelia, while Cornelia was in Las Vegas, Nevada. So Mr. Mulvihill committed a tort in Nevada. The District Court specifically found that Mulvihill- He didn't commit the tort in Nevada. He committed the tort in Brazil, didn't he? No. He committed the tort in Nevada because the tort is complete upon publication. He could speak to himself all he wanted in Brazil, but when he published his statements to Cornelia, he committed the tort in Nevada. It's no different than the Fifth Circuit finding that a non-resident defendant who makes a phone call into Texas or Mississippi has committed the tort in those cases, in those states, for purposes of specific personal jurisdiction. It's no different from a non-resident defendant sending a letter, a defamatory letter into Ohio, where the Ohio court found that there was specific personal jurisdiction. The restatement for tort says specifically that the tort is committed upon publication and it can be a single individual other than the one defamed. But Ms. Peterson, does it make any difference where Bukowski or Moneyberg, whatever you prefer, resides? Not for purposes of this- Not for purposes of looking at this under Briskin versus Shopify. Mr. Bukowski is a Nevada resident. We have maintained that the district court engaged in improper weighing of evidence and evaluative opinions about where he resided. But Briskin says that that contact, that digital contact, is a relevant contact. The Briskin court actually says, too, I want to just point something out that when the district court ruled, he said, well, this was really only a statement to Cornelia and it had a proverbial layover in Nevada before it went on to global application. But this court's decision in Briskin says that there is express aiming towards a forum when that person has contacts that are of his own choice and are not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience. In this case, Mulvihill deliberately and intentionally reached out beyond his home in Brazil and under the umbrella of his company so that he could have an interview with- I guess I don't quite see where the something more is for express aiming. Briskin makes clear, while it's gotten rid of differential targeting, that you still need something more. And all I've heard you really say is this happened to be the comments were spoken to someone who was in Nevada, but there was no- what's the something more that Nevada is involved in? Well, I think Briskin actually makes the point that had- I think they say this in the In Bonk decision, that had someone surreptitiously entered the house in California and stolen that items, that that person would no doubt be subject to specific personal jurisdiction in California. This case is no different. Mulvihill was digitally connected not once, but twice. His actions weren't random or fortuitous. They were intentional. And certainly, this court's decision in Freestream says that if there is an intentional tort committed in the state, that that is dispositive on the first two issues for the minimum context. As you say, the language is that the connection to the forum state must be something more than fortuitous. What I'm struggling with is, it seems pretty fortuitous to me that Cornelia happened to be in Nevada, but he could have been in any other state when this was going on, in terms of the nature of this interaction. And I don't see where this- where it's going more than fortuitous with respect to  In the excerpts, we've referred to some WhatsApp messages between Mr. Mulvihill and Mr. Cornelia, where Mr. Mulvihill asked, where are you, Mr. Cornelia? And Cornelia said, I'm in Las Vegas, Vegas, Nevada. So he knew this was not just logging on and wondering where he was. He knew where he was. Doesn't that support the contrary? He says, according to what you just told me, where are you? He didn't even know he was in Nevada before the conversation apparently happened. So how is that that he really cares at all whether or not Nevada is the person who he's speaking to? He says, where are you? Because he went forward with making his statements and committing that tort. And the district court found that Cornelia was digitally connected and was in Nevada. And that is dispositive on the issue. Did Mulvihill have any other direct contacts with Nevada? Mulvihill, well, he had been in Las Vegas previously. That was the subject of the discussions in the videos that he was the subject of an arrest here in Las Vegas. So he did have a prior contact with Nevada, certainly. And that was with Bukowski? That's correct. His defamatory statement was that somehow Mr. Bukowski had set him up for that poor felony arrest that he had here in Nevada. Did Mulvihill have any other contacts with Nevada? His business is not incorporated here. He's a resident of Brazil. But the contact that he had was the tort that he committed. If he had been on the edge of California and jumped over the state line to make his defamatory statements, we would certainly be considering him to have committed the tort here in Nevada. The fact that he's digitally connected is dispositive on the issue, because Briskin says that that's a relevant contact, under Walden even, that that's a relevant contact with the forum. If the panel doesn't have any other questions on the Mulvihill defendants, I'd like to move then to the appeal regarding the Cornelia defendants. The district court erred in finding that Mr. Bukowski and his company, Wealthy, were limited-purpose public figures. There is a three-prong test that this court has identified to establish whether someone is a limited-purpose public figure, and it's the PlanetAid test. The district court engaged in no analysis of any of those three factors. I'd like to highlight just a couple of those factors. The first one that this court says should be considered is whether a public controversy existed when the statements were made. And PlanetAid instructs that it must be a real dispute, the outcome of which affects the general public or some segment of it. And PlanetAid cites to another case that says the issue has to have substantial and foreseeable ramifications for non-participants. The public controversy, as well, has to exist when the statements were made. But the district court didn't identify any sort of public controversy, nor could it. There's nothing that is a real dispute, the outcome of which affects the general public or some segment of it. Additionally, under PlanetAid, the defamation has to be related to the pre-existing controversy. Now, again, this is a difficult analysis when the district court didn't even give us a public controversy, but there was no analysis about how the defamation was related to any such controversy. And certainly, defamatory statements that Mr. Bochkowski manufactured or sold illegal drugs or was involved in the death of a woman or that he framed Mr. Mulvihill for his arrest, none of this has anything to do with any sort of pre-existing public controversy. Because there is no way that the district court could have found that he's a limited purpose public figure. Doesn't the record reflect, though, that these two are competitors, in some respects, locked into a battle about whose services are better in this sort of, I guess, self-help, life coach type of thing? And that pre-existed, these statements. And this is a reflection of that ongoing dispute and controversy. So in this sphere of life coach or whatever we call it, aren't they figures of note? Well, the district court didn't engage in that analysis. I would agree that Cornelia and Mr. Bochkowski are certainly competitors, but the district court... How about Mr. Mulvihill? Does he provide any of these services as well? Yes. Yes, he does. Now, but I wanted to discuss, though, that the district court merely found Mr. Bochkowski as a public figure because he was a business owner, because he owned a federally registered trademark, and because he has 23,000 subscribers on YouTube. That is not sufficient, certainly not sufficient to be an all-purpose public figure. But I believe that Applees have waived that issue, but it's not sufficient to... Before all this happened, wasn't there some controversy about the legitimacy of wealthies and the quality of Bochkowski's services? So the controversy was largely raised by Mr. Mulvihill. Now, we did object in the district court below as to the admission of some evidence because the evidence that had been offered as a potential controversy was submitted that it was actually evidence that had occurred after the defamation. And so under Planet Aid, there can't be a public controversy when the statements are made if there becomes a controversy later. So that is the issue. But Planet Aid still instructs that there has to be a real dispute, the outcome of which affects the general public, and there's nothing that the district court identified, and there's no outcome that affects the general public in this case. Is there anything in the record that shows that there was a little controversy over the company and Mr. Bochkowski before all this happened? I think there's some Instagram posts. But again, the Instagram posts, the posts by Mr. Mulvihill, I'm not sure you can create your own public controversy by defaming someone and then coming back in and saying there's a preexisting controversy about your performance. So I think that's the problem here. With regards to this erroneous finding that Mr. Bochkowski and Wealthy were public figures, that was erroneous. And as a result, then the entire decision by the district court is in error because the district court analyzed the defamation claim and the business disparagement claim and the intentional infliction of emotional distress claim only under the actual malice standard. There would be no actual malice if they are not public figures. And so that was also in error. I do want to address just a few things about the Lanham Act claim because the district court also erred in granting summary judgment on the Lanham Act claim. Under the Lanham Act, a person or business is liable for using promotion and advertising to disparage another entity to obtain business and profit. And for the definition of promotion and advertising, this court has adopted the four Eric's factors laid out in Eric's versus neutral search. The district court didn't analyze all four, only analyzed the first one with regards to commercial speech. Now, Mr. Cornelia is in direct commercial competition with plaintiffs. Mr. Cornelia has his house hack expert manual, and he has his mentorship services. And plaintiffs have their real estate riches program and their related mentorship services. But the district court, when he analyzed the Lanham Act claim, just very simplistically said that because the two videos didn't mention Cornelia's own products, that commercial speech did not exist. Now, this is error because the statutory language refers to any person who in commercial advertising or promotion misrepresents the nature, characteristics, qualities of his or another person's goods or services. There's no requirement that the speech has to only reference the speaker's own products in order to bring it within the Lanham Act. And I do see I have five minutes remaining. If there are any questions for the panel, I'm happy to answer them. Otherwise, I'd like to reserve the remaining for rebuttal. You got it. We'll reserve that time. We'll hear from you a little bit. Thank you. All right. Go ahead, Ms. Green. Thank you, Your Honor. May it please the court. My name is Renee Green, and I represent John Mulvihill and John Anthony Lifestyle, LLC. From here on out, I will refer to them as the Mulvihill defendants. The question here before the court today, as it relates to our appeal, is even after the Briskin v. Shopify decision is whether Nevada may exercise specific jurisdiction over a dispute where neither the defendants nor the plaintiffs reside there, and also where the Mulvihill defendants' alleged conduct has no meaningful connection today. Even after the Briskin decision, the answer to that question is no. Walden was not overturned, and the Calder effect test still applies to this day. So with the Calder test, plaintiffs must prove that the non-resident defendants, being the consummate some transaction with the form or the resident thereof. Now, throughout the entire action, Mr. Buskowski initially claimed he was a Nevada resident. Specifically, he was a resident of Incline Village. However, upon receiving evidence that said otherwise, Mr. Buskowski finally admitted that that was untrue. So now that we know that we are not dealing with the Nevada resident as the plaintiff was in Briskin v. Shopify, now we turn as to whether the defendants created sufficient Why is it so significant that he has to be a resident of Nevada? It's not significant, but what it would show is that Mulvihill's defendants directed their activity towards Nevada, being a Nevada resident. And that would fall more in line with the Walden test where the harm would have been created in Nevada. However, that's not the case here. And it would have supported more of a finding a specific jurisdiction. But that's not the case. Not only was he not a resident, but also the Mulvihill defendants, now we're turning to them. They did not have sufficient contacts here with Nevada. It is in your view that there was no tort committed. But if there was a tort committed, was it committed in Brazil or in Nevada? Correct, Your Honor. And that's where we believe that plaintiffs conflate where the reputational injury had become plaintiffs are claiming the reputational injury occurred in Nevada. The reputational injury, in that sense, occurred really nationwide. The question is, and the reason why plaintiffs sued defendants was because of the final publication, the ultimate distribution of data, not because that it had a conversation with Cornelia, who happened to be in Nevada. And that's really important. And even the Ninth Circuit determined that in Keaton, which was dealing with a Hustler magazine publication. It did not look to the paper distributor where the Hustler magazine obtained the print paper or the company that printed it. What it determined was whether the defendant had some level of control over the ultimate distribution of its products beyond simply placing the products in the stream of commerce. So the reputational injury, as we are here today, is because of a YouTube posting, not because of a conversation with Cornelia. The YouTube posting, unlike the action that occurred in Shopify, was placed on a passive website. In Briskin versus Shopify, Shopify was a web-based company, whereas the Mulvihill defendants were not. And they had personally and physically installed cookies onto California residents' phones. In contrast, this was an individual who had a conversation with another individual and passively published the posting on YouTube. As indicated when posting it on YouTube, the Mulvihill defendants did not have some level of control over the ultimate distribution of who was going to watch it. In fact, anyone in the world could have watched it. And in Briskin versus Shopify, Shopify conceded. And the reason the Ninth Circuit reversed its earlier decision and found specific jurisdiction was that it stated that, quote, as its regular course of business, Shopify is alleged to target California consumers to extract, collect, maintain, distribute, and exploit. The Mulvihill defendants did not collect any information from the customers. It didn't distribute any information to the customers. And it didn't personally enter and extract data. Well, Mulvihill had a lot to say, though, about Wealthy and Mr. Bukowski, correct? I do agree, Your Honor. He had a lot to say. They alleged that it was defamatory. They alleged it was defamatory. You know, harmed his reputation. Yes, Your Honor, Bukowski alleges that it harmed his reputation when he claimed he was a Nevada resident when he was not. As I indicated, this was a passive website. So are you saying that he could only be injured in Nevada? No, he couldn't only be injured in Nevada. The question is, though, that defendants didn't have the requisite connection to Nevada in order to be hailed into court into Nevada. And that's where, like we're saying, even with Briskin today, it still stands that a passive website alone and cyber pursuant to cyber cell does not create enough to hail somebody into another court where they're not a resident. Does that mean that there would be no place that this case could be brought? No, and that goes into, and I did kind of gloss over the first one. The second one is in regards to the connections to Nevada. There are no connections. The ones with Cornelia's happenstance. So now we're going into the third one is that jurisdiction in Nevada is unreasonable. I think as we sit here today, it's easy to see that jurisdiction could have been asserted somewhere else. Mr. Bukowski himself, after the court dismissed the action in Nevada, brought this nearly identical action in Wyoming where jurisdiction would have been more proper. Wyoming is where one of Mulvihill's entities is incorporated. There are other jurisdictions it's being litigated to this day. So asserting it in Nevada when there's no resident, or Mulvihill's not a resident, Bukowski's not a resident, nor his company, coupled with the fact that the defendant had no meaningful connections here in Nevada, makes the jurisdiction in itself unreasonable. And your honor, I would like to reserve three minutes. If there are any questions, I would like to reserve the three minutes for rebuttal. And rebuttal as to which issue? As it only relates to the motion to dismiss matter, the jurisdiction. Okay. All right. Understood. Okay. Thank you. May it please the court. I am Mark Randazza here on behalf of Mr. Cornelia. This case is about abusing the litigation process to suppress journalism when the subject does not find the coverage flattering. And investigative reporting in this circuit is at stake. Now, the first issue I want to address is the public figure status. If you look in the record, we have magazine coverage about Mr. Bukowski's services and goods, beginning in Entrepreneur Magazine, Entrepreneur India, Haute Living, Tech Buzz, the Jerusalem Post, lastly, Playboy, Maxim, all of this prior to anybody saying anything about Mr. Bukowski, the Baltimore Post Examiner, Business Insider, California Herald, Disrupt Magazine, FHM, bits of journalism after journalism, discussions on Reddit. This guy was not just a public figure, but willingly so. Now, this debate, this dispute, this... In your view, was there any controversy about him or was that just all good promotional advertisement? Well, there's a lot of controversy about him on Reddit. There was a lot of controversy about him. And that's in the record. The record is replete with examples of this controversy about him. Explain to me, in your view, what was the controversy? Mr. Mulvihill and he were already in a dispute about these facts. Mr. Mulvihill was outspoken about him prior to this. That's why he was being interviewed by Mr. Cornelia. Mr. Cornelia has a journalism program here where he looks at people and he says, is this a real guru or a fake guru? One of the things they sued over was him being called a fake guru. That's not a statement of objective fact that can even be an issue for a defamation case. But there would be no reason to interview Mr. Mulvihill, but for the fact that he is the most outspoken authority about Mr. Bushkowski. I guess I'm wondering where the line, if Mr. Bushkowski here is a limited-purpose public figure, I'm not sure where we draw the line. Who isn't a limited-purpose public figure? I mean, he's not particularly, as I understand the record, some prominent person generally in the community. There are a plethora of podcasts and interviews these days. If you're involved in any of those things, do you automatically become a limited-purpose public figure? Well, public figure status is contextual, Judge Seaborg. For example, in Nevada, if there was a Supreme Court case that dealt with a member of the thrifting community, we're talking about this little tiny community of people and somebody is well-known within it. Mr. Bushkowski has been one of these online selling his expertise people for about half a generation, starting competing with Mr. Mulvihill or at the same time as Mr. Mulvihill in the so-called pickup artist sphere. He then took that and turned it into wealth investing. Well, it may well be. I'm not saying this, maybe this is the case, but it seems to me that under that sort of more people are limited-purpose public figures than people who are not. I mean, I just I'm wondering where then maybe that's the way the world is going. But where are the limits? I mean, I don't think that this case needs to define the limits of what makes somebody a public figure or not. I think if they look at Mr. Bushkowski, in this case, on this record, there was a years long debate about whether this guy was full of it or not. Millions of Instagram followers, dozens of press articles, wherever that line is. He blew past it years ago and he is well within it, criticizing his goods and services, something that he spends a lot of effort marketing himself for. I mean, it's like saying a business that buys advertising. You can't you can't argue that it's advertising isn't true. It simply says, let me ask you, if you if you're not in the world of a limited-purpose public figure and there is no actual malice requisite, do you still have an argument that this shouldn't have proceeded? I don't think that any reasonable juror could even find that this was negligent reporting. Mr. Mr. Mr. Cornelia interviewed somebody. He found him credible. Despite that fact, he checked up on him. The record shows that he interviewed trusted associates to get more information about him. He found no reason that he wouldn't be credible. There was no reason to doubt anything that Mr. Mulvihill said. So, yes, if if in some strange world, someone with millions of followers, millions of viewers, just dozens and dozens of articles about him, both earned and bought media, isn't a public figure, you're changing the scope of public figure law in the Ninth Circuit, if you find that. But even if you do, there's no way he's even going to be able to show negligence. But the fact is, here, there was absolutely no way that any reasonable juror could have met the standard for defamation. Now, I will say there is while it doesn't matter what the lower court said. You're here on DeNovo review. There is one error that it met that that it made that I'd like to point your attention to. And that is there is a lack of actual malice here, not only because there was even a lack of negligence, but most of these statements are statements of opinion based on disclosed facts. So Mr. Mobile Hill is on camera, says this is what I think for that reason. That's a disclosed fact. Somebody else can make their own opinion about that. Mr. Cornelia stated that at the beginning of the broadcast, as the record shows, that missed that any everything here was merely allegations. Do your own research. But every bit of opinion here was based on a disclosed fact. But if you do not find actual malice, you must also find that Mr. Cornelia satisfied prong one of the Nevada anti-slap statue. All right. That standard, as shown in Rosen versus Tarkanian, is an even easier standard for a defendant than actual malice. Actual malice, as you are all aware, requires knowing falsity. We don't have that or a reckless disregard for the truth. We don't even have negligence, much less recklessness under prong. One of the anti-slap statute, even recklessness is permitted. Good faith means true or without knowledge of its falsity, even allowing recklessness. The other issue that I'd like to address is this commercial speech issue. The fact that it's being called false advertising. It's simply absurd. And part of a disturbing trend that I've seen as a defamation defense attorney, the plaintiffs are trying to do to try to call anything that they want to bring as a defamation case as false advertising. The best example, not in this circuit, is the Tobinik versus Novella case, which we cited in that situation here. What you have here is the speech has to be an advertisement. This court adopted a definition that includes that the speech must be made for the purpose of influencing customers to buy the defendant's goods and services. If you look at this interview, there's nothing in here trying to say you should come and buy Mr. Cornelia's pamphlet that he put out a year or so before. A simple motive to sell copies of a publication or to obtain an incidental economic benefit without more doesn't make it commercial speech. If you look at Eric's versus NutriSearch Corp., the type of economic motivation is not the focus. The crux is on whether the speaker had an economic motivation. So the economic benefit of selling some other services was the primary purpose of speaking. It's an intent to influence consumers to come to Mr. Cornelia's services. Mr. Cornelia did want consumers to come to his YouTube channel, but to watch and learn about what he had investigated and found. If we adopt their view, it would mean that no journalist could discuss anything at any time prior to them practicing journalism. That's even more absurd than Tabinik versus Novella. If you have any questions, I'd be glad to answer them. Otherwise, I'd like to reserve the rest of my time on my prong one argument for rebuttal. Very well, thank you. Thank you, Your Honor, Tammy Peterson again for the appellants. Let me address my colleagues, Ms. Green's comments about the Mobile Hill defendants. I do want to clarify the United States Supreme Court has certainly said in Keaton versus Hustler that a plaintiff in a defamation case does not need to be a resident of the forum. And so it is not some separate case.  It is a separate requirement that needs to occur before a defamation and business disparagement claim can be brought against the bad actor. Now, I heard my colleague suggest that this was some sort of a passive website that Mr. Mobile Hill was participating in. That is not correct. The record reflects that he sought out Mr. Cornelia to appear on his series on his YouTube channel. He wanted to be recorded. He wanted to say these things. He asked where Cornelia was located. He found out he was in Las Vegas. He even asked Cornelia if Cornelia had insurance for defamation. And then he got on a video and he said that these defamatory statements not once, but twice. The argument that somehow this it would be unreasonable to exercise jurisdiction over the Mobile Hill defendants. Actually, we don't really have a reason in the briefing below or a reason today why it is unreasonable to exercise jurisdiction over the Mobile Hill defendants in Nevada. What we have is a statement that Mr. Mobile Hill doesn't reside here and a statement that there is some factual disputes about Mr. Bochkowski's resident. That is not enough to say that it is unreasonable to exercise jurisdiction over a non-resident defendant. The tort was committed when the defamatory statements were made and published. I want to address a few of my colleagues' comments with regards to public figure status. And first, I want to be clear. There's no finding that Mr. Bochkowski is somehow a celebrity or a public official or a household name. In fact, in the briefing below, the Cornelia defendants didn't assert that he was an all purpose public figure. So there's no possible finding there. In fact, it was Mr. Cornelia, and this is in the excerpts, who testified in his deposition that Mr. Bochkowski was not generally known. And I think to Judge Seaberg's comment or question that if Mr. Bochkowski is a limited public purpose figure, then it is an unworkable standard for any district court to determine. Because I guess if you own a business here in America, then you are a limited public purpose figure. And that is not a workable standard. The standard that was set forth in this court's decision in Planet Aid explains what must be set forth. And those things were not met. There was no public controversy. I did hear my colleague assert that Mr. Cornelia somehow found Mr. Mulvihill credible. I want to be clear about this. Cornelia didn't publish what wasn't engaging in some live video. He recorded these two videos and then edited them for hours and then posted them on his YouTube channel where he sells his own products. Cornelia sells his competing services on the same channel. But this idea that he was somehow credible is just belied by the record. Mr. Cornelia's sum total of his research was that he didn't research the educational background of Mr. Butchkowski because he thought that was irrelevant. And he thought that it was enough to say that Larson Consulting was money laundering because it didn't have any Facebook page content and it only had one officer and it didn't have any signage. On those two alleged defamatory comments, are they subject to the argument that they're just opinion with respect to, you know, his University of Chicago degree, whether or not it was a, you know, full-fledged degree? And then the question about he thinks this company could be money laundering and has the indicia of that. Aren't those opinion statements? Well, the statements all together would lead a reasonable listener to think that Mr. Butchkowski had been defamed, had been injured in terms of his business. But I just want to point out that the Nevada Supreme Court has said in Miller versus Jones that if a statement is susceptible of multiple interpretations, one of which is defamatory, then if there's any ambiguity about whether or not it's opinion, that should be resolved by the trier of fact. And I see my time has expired. So thank you. All right, your honors. Thank you. I'm muted. Sorry about that. I just want to say thank you, Ms. Peterson. And I think Ms. Green is actually next. And then Mr. Randazzo. Yes, thank you, your honor. As stated, like I said, on behalf of Mobile Hill defendants, we are only arguing the motion to dismiss as that was on appeal. So I do want to just clarify that. However, I did want to state as it relates to the Calder effect test that although the plaintiff does not need to be a resident of the forum state, which seems to be conceded here, there's a specific jurisdiction never existed because the Mobile Hill defendants did not have sufficient contact with Nevada. So I do want to state that that it's clear plaintiffs or Butchkowski is attempting to strap on the contacts by trying to claim Cornelia as a resident. However, the court in Morrill versus Scott Financial Corporation has held that defendants contacts with the person who resides there are insufficient to still establish specific jurisdiction. As stated, even the new ruling in Briskin versus Shopify does not change the district court's analysis in this case, because in Briskin versus Shopify, we are dealing with a web based company where the Mobile Hills were not who extracted data from the customers. This case is still more akin to cyber cell versus cyber cell, which is still good law here in the Ninth Circuit, where there was a passive advertisement that anyone could access. And that's what happened when it hit the stream of commerce. The Mobile Hill defendants did not have the ability to control who would see this video after it entered the stream of commerce. And that's what Keaton specifically points to as to whether some level of control existed over the ultimate distribution of its products beyond simply placing its product in the commerce. And that with these basis of facts did not occur in this case. So as a result, the cyber cell case is akin to this matter. In addition to the Marvix analysis from when it says that a passive website that merely hosts information does not qualify as purposeful activity, invoking the benefits and protections in which the website can be viewed. I also wanted to just indicate as well that there are many reasons as to why a certain jurisdiction here in Nevada is unreasonable. It has been a burden on defendants to be hailed into a court from which he has no contacts with and very expensive. Also, too, there are other jurisdictions who are better served, as I indicated, Wyoming, even where Bushkoski lives, which is likely Illinois, who have a more of an interest in adjudicating this dispute as well. And if I don't have any other questions, Your Honor, that is my time. All right. Thank you, Counsel. And we'll wrap up with Mr. Randazzo. Thank you, Your Honors. For the public figure issue, an aggressive advertising campaign that invites public attention, comment, and criticism establishes public figure status. That's Make F vs. Trump from this court. Planet Aid vs. Reveal, same. Finding a plaintiff was a public figure by actively seeking attention from the press, promoting themselves through social media, employing PR staff, and soliciting donations. We have all that here. The plaintiffs alleged themselves into public figure status, 23,000 YouTube subscribers, 1.2 million views, 136,000 other subscribers. Four million people follow him on Instagram. So this aggressive campaign resulting in dozens of articles about the plaintiff shows him as a public figure for these purposes. Once you get there, I'm sorry. Finish your thought. Once you get there, it's easy. Bose requires that you show by clear and convincing evidence that a reasonable juror could find that you overcame actual malice. You could not do that. And therefore, when you look at this case in the lens of the anti-SLAPP statute, we have easily satisfied prong one and the lack of supportability of the case itself satisfies prong two. The decision here should show that there is no Lanham Act claim. There is no defamation claim. We've satisfied prong one and we've satisfied prong two. Thank you very much. I want to thank all counsel for their briefing and argument and their patience as we finally got this case argued. This matter is submitted and this special panel for today is adjourned. Thank you. Thank you, your honors. This court for this session stands adjourned.
judges: PAEZ, OWENS, Seeborg